# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

59

CA 12-01288

PRESENT: SCUDDER, P.J., PERADOTTO, CARNI, WHALEN, AND MARTOCHE, JJ.

---

SHAWN GILES, ALSO KNOWN AS SHAWN ANTHONY COFFEE,
PLAINTIFF-APPELLANT,

V                                              MEMORANDUM AND ORDER

A. GI YI, GERALD BREEN, DEFENDANTS-RESPONDENTS,
ET AL., DEFENDANTS.

---

ATHARI & ASSOCIATES, LLC, UTICA (NICOLE C. PELLETIER OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

HISCOCK & BARCLAY, LLP, ROCHESTER (GARY H. ABELSON OF COUNSEL), FOR
DEFENDANT-RESPONDENT GERALD BREEN.

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, WHITE PLAINS (WILLIAM
WINGERTZAHN OF COUNSEL), FOR DEFENDANT-RESPONDENT A. GI YI.

---

Appeal from an order of the Supreme Court, Monroe County (Matthew A. Rosenbaum, J.), entered December 15, 2011. The order, insofar as appealed from, granted the motion of defendant Gerald Breen to compel plaintiff to produce certain medical reports, under penalty of preclusion, and denied the cross motion of plaintiff for a protective order.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for injuries he allegedly sustained as a result of his exposure to lead-based paint while residing in a number of apartments rented to his mother from 1992 through 1996, including apartments owned by A. Gi Yi and Gerald Breen (defendants). As amplified by his bills of particulars, plaintiff alleged that he suffered 35 injuries as a result of his lead exposure, including neurological damage, diminished cognitive function and intelligence, behavioral problems, developmental deficiencies, increased probability of emotional and psychological impairments, hyperactivity, irritability, memory deficits, decreased educational and employment opportunities, and speech and language delays.

Pursuant to CPLR 3121 and Uniform Rule 202.17 (22 NYCRR 202.17), Breen served notices fixing the time and place of two medical examinations (hereafter, examinations) and requested "copies of any reports of any physicians who have treated or examined the plaintiff"

in advance of the examinations (*see* 22 NYCRR 202.17 [b] [1]).  In response, plaintiff provided Breen with educational records and medical records of his treating physicians.  None of those records, however, linked the particular conditions, symptoms, or problems that plaintiff was experiencing with his exposure to lead (*see Nero v Kendrick*, 100 AD3d 1383, 1383).

Breen postponed the examinations and moved to compel plaintiff to produce "medical reports of treating or examining medical service providers detailing a diagnosis of all injuries alleged to have been sustained by plaintiff as a result of exposure to lead-based paint" or, in the alternative, to "preclud[e] the plaintiff[] from introducing proof concerning said injuries."  Breen asserted that, without such information, he would be "forced to determine the nature and extent of the [examinations] to be performed without any evidence that the alleged injuries sustained by plaintiff:  (1) exist, and (2) are causally related to ingestion and/or inhalation of lead-based paint as alleged in [the c]omplaint."  A. Gi Yi joined in Breen's motion to compel.

Plaintiff opposed the motion and cross-moved for, inter alia, a protective order pursuant to CPLR 3103.  Plaintiff contended that his bills of particulars provided defendants with sufficient notice of his alleged injuries.  With respect to causation, plaintiff's attorney asserted that plaintiff "suffered [lead] neurotoxicity at . . . blood lead levels known to cause severe brain and nerve damage during his residence at the defendants' respective properties," and cited various government reports and studies detailing the potential effects of lead poisoning in young children.  Plaintiff further contended that defendants were in effect seeking an expert report pursuant to CPLR 3101 (d) as opposed to the report of a medical provider pursuant to 22 NYCRR 202.17, and were improperly requesting that plaintiff "prematurely go through the expense of retaining an expert."

Plaintiff appeals from an order that granted the motion "in all respects," denied the cross motion, and directed plaintiff to produce "a medical report or reports of any treating or examining medical service provider detailing a diagnosis of any injuries alleged to have been sustained by the plaintiff . . . and causally relating said injuries to plaintiff's alleged exposure to lead-based paint . . . before any [examinations] are conducted."  The order further provided that, "in the event the plaintiff fails to produce the aforementioned report or reports, [he] shall be precluded from introducing any proof concerning injuries alleged to have been sustained by the plaintiff." We affirm.

It is well settled that "[a] trial court has broad discretion in supervising the discovery process, and its determinations will not be disturbed absent an abuse of that discretion" (*Finnegan v Peter, Sr. & Mary L. Liberatore Family Ltd. Partnership*, 90 AD3d 1676, 1677; *see Hann v Black*, 96 AD3d 1503, 1504; *WILJEFF, LLC v United Realty Mgt. Corp.*, 82 AD3d 1616, 1619).  New York has long adhered to a policy of liberal, open pretrial disclosure (*see Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954; *DiMichel v South Buffalo Ry.*

*Corp.*, 80 NY2d 184, 193).  CPLR 3101 (a), which governs
discoverability, broadly provides that "[t]here shall be full
disclosure of all matter material and necessary in the prosecution or
defense of an action" (*see Hoenig v Westphal*, 52 NY2d 605, 608;
Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY,
Book 7B, CPLR 3101:4).  That provision "has been liberally construed
to require disclosure where the matter sought will 'assist preparation
for trial by sharpening the issues and reducing delay and prolixity' "
(*Hoenig*, 52 NY2d at 608, quoting *Allen v Crowell-Collier Publ. Co.*, 21
NY2d 403, 406).  "Thus, restricted only by a test for materiality 'of
usefulness and reason' . . . , pretrial discovery is to be encouraged"
(*id.*, quoting *Allen*, 21 NY2d at 406).

     With respect to specific disclosure devices, CPLR 3121 (a)
provides for a physical or mental examination of any party when that
party's physical or mental condition is "in controversy" (*see Hoenig*,
52 NY2d at 609; Connors, Practice Commentaries, CPLR 3121:1).  CPLR
3121 (b) provides for the exchange of certain medical reports (*see
Hoenig*, 52 NY2d at 609), and Uniform Rule 202.17 "elaborates on the
exchange of medical reports in tort actions, supplying more detail
than CPLR 3121 (b)" (Connors, Practice Commentaries, CPLR 3121:8 at
313).  Uniform Rule 202.17 provides in relevant part that, "*[e]xcept
where the court otherwise directs*, in all actions in which recovery is
sought for personal injuries, disability or death, physical
examinations and the exchange of medical information shall be governed
by the provisions hereinafter set forth:  (a) At any time after
joinder of issue and service of a bill of particulars, the party to be
examined or any other party may serve on all other parties a notice
fixing the time and place of examination . . . (b) At least 20 days
before the date of such examination, or on such other date as the
court may direct, the party to be examined shall serve upon and
deliver to all other parties the following, which may be used by the
examining medical provider:  (1) copies of the medical reports of
those medical providers who have previously treated or examined the
party seeking recovery.  These shall include a recital of the injuries
and conditions as to which testimony will be offered at the trial,
referring to and identifying those x-ray and technicians' reports
which will be offered at the trial, including a description of the
injuries, a diagnosis and a prognosis" (emphasis added).

     CPLR 3103 (a) vests a trial court with the discretion to "make a
protective order denying, limiting, conditioning or regulating the use
of any disclosure device," either "on its own initiative, or on motion
of any party or of any person from whom discovery is sought."  Such an
order "shall be designed to prevent unreasonable annoyance, expense,
embarrassment, disadvantage, or other prejudice to any person or the
courts" (*id.*).

     Under the unique circumstances of this case, we conclude that
Supreme Court did not abuse its broad discretion in directing
plaintiff to produce a medical report containing a diagnosis of the
alleged injuries sustained by plaintiff and causally relating such
injuries to lead exposure before any CPLR 3121 examinations are
conducted.  As previously noted, plaintiff alleges numerous and wide-

ranging neurological, physiological, psychological, educational, and occupational effects of his childhood exposure to lead. Although plaintiff disclosed his medical and educational records, none of those records diagnoses plaintiff with a lead-related injury or causally relates any of plaintiff's alleged physical or mental conditions to lead exposure. Indeed, plaintiff's mother testified at her deposition that no health care provider had ever told her that plaintiff had "any residual injuries from lead exposure." The only reference in the disclosed records to an injury that may have been caused by exposure to lead is a school district health and development assessment, which states that "[e]levated [blood] lead level may have had an effect" on plaintiff's educational performance.

Although the dissent is correct that CPLR 3121 and 22 NYCRR 202.17 do not *require* the disclosure directed in this case, they likewise do not *preclude* a trial judge from proceeding in the manner at issue herein. As the Court of Appeals has noted, "CPLR 3121 does not limit the scope of general discovery available, subject to the discretion of the trial court, under CPLR 3101" (*Kavanagh*, 92 NY2d at 953-954). Rather, CPLR 3121 "broadens rather than restricts discovery" (*Hoenig*, 52 NY2d at 609). With respect to Uniform Rule 202.17, that rule is prefaced by the phrase "[e]xcept where the court otherwise directs," thus preserving the trial judge's discretion to manage the discovery process (*see generally* CPLR 3101 [a]; 3103 [a]).

Contrary to the view of the dissent, our affirmance of the trial court's order does not impose "unduly burdensome obligations not contemplated by 22 NYCRR 202.17" upon all personal injury plaintiffs. Rather, we simply conclude that where, as here, the records produced by a plaintiff pursuant to Uniform Rule 202.17 contain no proof of medical causation, i.e., evidence causally linking the plaintiff's alleged injuries to his or her exposure to lead, it is not an abuse of discretion for a trial court to determine that "defendants should not be put to the time, expense and effort of arranging for and conducting a medical examination of plaintiff without the benefit of [a] report[ or reports] linking the symptoms or conditions of plaintiff to defendants' alleged negligence" (*Nero*, 100 AD3d at 1384; *see generally* CPLR 3101 [a]; *Finnegan*, 90 AD3d at 1677; *Neuman v Frank*, 82 AD3d 1642, 1643).

In contrast to the vast majority of personal injury actions, which involve discrete injuries sustained at a specific point in time, lead paint cases typically involve exposure over a sustained period of time and, unlike other toxic tort cases, there is no "signature injury" that is linked to lead exposure in the way that, for example, mesothelioma is linked to asbestos, emphysema is linked to cigarette smoke, or adenosis is linked to diethylstilbestrol, known as DES (*Brenner v American Cyanamid Co.*, 263 AD2d 165, 173; *see* Lindsay F. Wiley, *Rethinking the New Public Health*, 69 Wash & Lee L Rev 207, 242 [2012]; Kenneth R. Lepage, *Lead-Based Paint Litigation and the Problem of Causation: Toward a Unified Theory of Market Share Liability*, 37 BC L Rev 155, 158 [1995]). The injuries plaintiff alleges herein, such as hyperactivity, speech and language delays, irritability, memory

deficits, and the increased probability of emotional and psychological impairments, "could have been caused by some source other than lead" (*Brenner*, 263 AD2d at 173) and, indeed, there is nothing in the disclosed medical records linking plaintiff's alleged injuries to lead exposure.

The dissent further asserts that our ruling requires a plaintiff to retain an "expert" at an "early stage of litigation." We disagree with that assertion. Contrary to the dissent's characterization, the order at issue on appeal was issued near the close of discovery, after the parties had exchanged medical and educational records and conducted depositions of the relevant witnesses. Moreover, the trial court did not require plaintiff to retain an expert within the meaning of CPLR 3101 (d) to render an opinion on causation. Rather, the court ordered plaintiff to produce a "medical report or reports of any treating or examining medical service provider." Pursuant to Uniform Rule 202.17 (b) (1), medical reports "may consist of completed medical provider, workers' compensation, or insurance forms that provide the information required by this paragraph," i.e., "a description of the injuries, a diagnosis and a prognosis." Thus, the court simply required plaintiff to provide *some* documentation diagnosing plaintiff with the injuries alleged and linking those injuries to the exposure to lead before requiring defendants to proceed with a physical or mental examination.

As the Court of Appeals has noted, the purpose of CPLR 3121 (a) is to afford the examining party the "opportunity to present a *competing* assessment" of the other party's physical or mental condition, which presumes that the examining party has received from the plaintiff medical reports concerning the plaintiff's claimed injuries and theory of causation (*Kavanagh*, 92 NY2d at 955 [emphasis added]). The trial court's order is thus consistent with 22 NYCRR 202.17 and the CPLR's general emphasis on broad disclosure, which facilitates more meaningful trial preparation "by requiring each party to 'tip their hand' well in advance of trial. This avoids surprise and tends to base the final result on the facts rather than on tactics" (Connors, Practice Commentaries, CPLR 3101:4 at 18).

We therefore conclude that, under the circumstances of this case, "it cannot be said that the trial court abused its discretion in finding that the need for the discovery outweighed the burden on the protesting party" (*Kavanagh*, 92 NY2d at 955), and thus there is no basis to " 'disturb the court's control of the discovery process' " (*Marable v Hughes*, 38 AD3d 1344, 1345).

All concur except WHALEN, J., who dissents and votes to reverse the order insofar as appealed from in accordance with the following Memorandum: I respectfully dissent because the majority's holding imposes unduly burdensome obligations not contemplated by 22 NYCRR 202.17 upon individuals seeking recovery for personal injuries. Contrary to the view of the majority, 22 NYCRR 202.17 does not require a personal injury plaintiff to retain an expert to address the issue of causation and provide the expert's report to the defendant prior to the defense medical examination of plaintiff.

Pursuant to CPLR 3121, defendants in personal injury actions may require a plaintiff to submit to a medical examination (*see* CPLR 3121 [a]). The procedures for the examination itself and the exchange of medical records prior to the examination are governed by 22 NYCRR 202.17. Pursuant to paragraph (b) of the regulation, a party submitting to such a medical examination must provide "to all other parties" at least 20 days before the date of the examination "(1) copies of the medical reports of those medical providers who have previously treated or examined the party seeking recovery. These shall include a recital of the injuries and conditions as to which testimony will be offered at the trial, referring to and identifying those X-ray and technicians reports which will be offered at the trial, including a description of the injuries, a diagnosis and a prognosis. Medical reports may consist of completed medical provider, workers' compensation, or insurance forms that provide the information required by this paragraph; (2) duly executed and acknowledged written authorizations permitting all parties to obtain and make copies of all hospital records and such other records, including X-ray and technicians' reports, as may be referred to and identified in the reports of those medical providers who have treated or examined the party seeking recovery." In the event that a party fails to disclose the material discussed in paragraph (b), he or she shall generally be precluded from introducing the materials at trial (*see* 22 NYCRR 202.17 [h]). Likewise, the court will not hear the testimony of any treating or examining medical provider whose medical reports have not been provided (*see id.*).

In its holding today, the majority concludes that, under 22 NYCRR 202.17 (b), plaintiff is required: (1) to retain an expert witness to render an opinion that plaintiff's medical conditions are causally related to his alleged exposure to lead-based paint; and (2) to provide that expert's report to defendants before plaintiff submits to the medical examination sought by defendants. Stated another way, the majority's holding requires plaintiff to *create* proof as to the cause of his medical conditions prior to undergoing defendants' medical examination. Such a requirement, however, is outside the scope of 22 NYCRR 202.17.

Of course, for plaintiff to succeed at trial, he will likely need to retain an expert to review his medical records and render the type of causation opinion contemplated by the majority. However, nothing in the language of 22 NYCRR 202.17 requires plaintiff to make such a disclosure, which is tantamount to an expert disclosure, at this early stage of litigation. Instead, by its plain language, 22 NYCRR 202.17 (b) (1) requires only the disclosure of "medical reports of those *medical providers who have previously treated or examined the party seeking recovery*" (emphasis added).

First, under 22 NYCRR 202.17 (b) (1), a personal injury plaintiff is required only to provide medical reports from "medical providers." Although the term "medical providers" is not defined in the regulation or in the CPLR, the term must be reasonably interpreted to mean individuals who render medical services. Indeed, other states have adopted similar definitions in various contexts (*see e.g.* OAR 436-010-

0005 [27], [28] [within context of workers' compensation, Oregon regulation defining "Medical Service Provider" as "a person duly licensed to practice one or more of the healing arts" and "Medical Provider" as "a medical service provider, a hospital, medical clinic, or vendor of medical services"]; *see also Palmer v Caruso*, 2009 WL 4251114,\*3 n 2 [WD Mich] [noting that a policy directive of the Michigan Department of Corrections defines "Medical Service Provider" as "[a] physician, physician assistant or nurse practitioner licensed by the State of Michigan or certified to practice within the scope of his/her training"]).  In my view, an expert witness retained to render an opinion as to causation solely for purposes of litigation is not a "medical provider" as that term is commonly understood, and the disclosure of such an expert's report is outside the scope of 22 NYCRR 202.17 (b).

        Second, even if I were to assume that a retained expert witness is somehow a "medical provider" within the meaning of 22 NYCRR 202.17 (b) (1), I would conclude that the regulation requires a personal injury plaintiff to provide only the reports of medical providers who have "*previously* treated or examined the party seeking recovery" (emphasis added).  Nothing in section 202.17 (b) (1) requires a personal injury plaintiff to create a report that has not previously been generated by one of his medical providers.  That interpretation is supported by 22 NYCRR 202.17 (g), which outlines the procedure for a personal injury plaintiff's submission of supplemental reports when the plaintiff "intends at the trial to offer evidence of further or additional injuries or conditions, nonexistent or not known to exist at the time of service of the original medical reports."  Subdivision (g) allows a plaintiff to serve a supplemental medical report "not later than 30 days before trial" so long as the plaintiff makes himself or herself available for an additional medical examination "not more than 10 days" after the service of the supplemental medical report.  Although this case does not involve a new injury or condition, I see no basis for allowing a plaintiff to introduce evidence of new injuries after the initial defense medical examination but, at the same time, denying him or her the ability to follow the same procedure with respect to a new expert report.

        In this case, the majority relies on our decision in *Nero v Kendrick* (100 AD3d 1383) for its holding.  In *Nero*, this Court reasoned that the moving "defendants should not be put to the time, expense and effort of arranging for and conducting a medical examination of plaintiff without the benefit of reports linking the symptoms or conditions of [the injured] plaintiff to [their] alleged negligence" (*id.* at 1384).  However, our decisions here and in *Nero* effectively require plaintiffs to incur onerous expert witness expenses at an early stage of litigation out of a concern for the convenience of defendants.  Such a requirement will have a chilling effect on personal injury litigation as law firms representing plaintiffs will be hesitant to accept new cases if they are required to retain expert witnesses at the outset of the litigation.

        Ultimately, 22 NYCRR 202.17 simply does not address whether a personal injury plaintiff must retain an expert witness to render an

opinion on the issue of causation and/or disclose that expert's report prior to the defense medical examination.  Pursuant to 22 NYCRR 202.1 (d), the provisions of part 202, which includes 22 NYCRR 202.17, "shall be construed consistent with the [CPLR], and matters not covered by these provisions shall be governed by the CPLR."  The disclosure of expert witnesses is governed by CPLR 3101 (d), which does not require plaintiffs to provide expert reports prior to defense medical examinations.  For these reasons, I respectfully dissent and would reverse the order insofar as appealed from, based on my conclusion that Supreme Court abused its discretion in granting the motion to compel and denying the cross motion for inter alia, a protective order, thus directing plaintiff to obtain and produce an expert report on the issue of causation prior to the defense medical examination.  To the extent that *Nero* (100 AD3d 1383) holds otherwise, I conclude that the case was wrongly decided.

Entered:  April 26, 2013                    Frances E. Cafarell
                                            Clerk of the Court